UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW WALDRON,<br><br>                Petitioner,<br><br>vs.<br><br>SUPERINTENDENT, Attica Correctional Facility,<br><br>                Respondent. | No. 9:07-cv-00154-JKS<br><br>MEMORANDUM DECISION |

Petitioner Matthew Waldron, a state prisoner appearing through counsel, has filed a petition for habeas corpus relief under 28 U.S.C. § 2254. Waldron is currently in the custody of the New York Department of Correctional Services, incarcerated at the Attica Correctional Facility. Respondent has answered the Petition, and Waldron has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

Following a trial by jury, Waldron was convicted in the Herkimer County Court of three counts of Sodomy in the First Degree (N.Y. Penal Law § 130.50(3)), and one count each of Promoting an Obscene Sexual Performance by a Child (N.Y. Penal Law § 263.10), Use of a Child in a Sexual Performance (N.Y. Penal Law § 263.05), and Possessing an Obscene Sexual Performance by a Child (N.Y. Penal Law § 263.11). The Herkimer County Court sentenced Waldron to various determinate and indeterminate terms of incarceration, most of which were ordered to run consecutively, aggregating 54 to 60 years.

Waldron timely appealed his conviction and sentence to the Appellate Division, Fourth Department. The Appellate Division affirmed his conviction but found the sentence to be unduly

harsh and ordered the sentence be modified accordingly.[1]  The New York Court of Appeals granted leave to appeal and affirmed the judgment of the Appellate Division on February 14, 2006.[2]  Waldron timely filed his Petition for relief in this Court on February 9, 2007.

## II.  GROUNDS PRESENTED/DEFENSES

In his Petition Waldron raises a single ground:  the failure of the District Attorney to indict within the time permitted by N.Y. Penal Law § 30.30 denied him a speedy trial.  Respondent asserts no affirmative defense.[3]

## III.  STANDARD OF REVIEW

Because the Petition was filed after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  Consequently, this Court cannot grant relief unless the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[4]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the

---

[1] *People v. Waldron*, 787 N.Y.S.2d 547 (N.Y.A.D. 2004), *aff'd* 847 N.E.2d 367 (N.Y. 2005).

[2] *People v. Waldron,* 847 N.E.2d 367 (N.Y. 2005).

[3] *See* Rules—Section 2254 Cases, Rule 5(b).

[4] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

Supreme Court] as of the time of the relevant state-court decision."[5]  The holding must also be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[6]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[7]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[8]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[9]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.[10]  Petitioner "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."[11]

---

[5] *Williams*, 529 U.S. at 412.

[6] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[7] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam).

[8] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[9] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[10] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[11] *Hawkins v. Costello*, 460 F.3d 238, 246 (2d Cir. 2006) (internal quotation marks and citation omitted).

In applying this standard, this Court reviews the last reasoned decision by the state court.[12] In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[13]

IV.  DISCUSSION

The following are the facts, as relevant to the Petition before this Court, as recited by the New York Court of Appeals:

> Defendant Matthew Waldron was arrested in the Village of Herkimer on January 23, 2000 after police obtained surveillance evidence showing he had engaged in several obscene acts with children.  On February 1, 2000, the Herkimer Village Court ordered a psychiatric and competency exam pursuant to article 730 of the Criminal Procedure Law.  The report was filed February 24, 2000.
>
> On March 20, 2000, defendant's assigned counsel was replaced by retained counsel, George Aney, who soon thereafter initiated negotiations with the prosecutor.  At the outset, the District Attorney, Michael Daley, told Aney that if the children had to testify at a grand jury proceeding, the minimum offer would be a 20-year determinate sentence.  According to Aney, he then began a deliberate strategy of delay, hoping that the District Attorney's offer would improve with time, a tactic that Aney communicated to his client.  Aney later testified that "[o]n more than one occasion," he had conversations with District Attorney Daley indicating that he wished to waive the statutory time period in order to reserve the possibility of negotiating a better sentence for his client.  In a letter dated July 11, 2000, Aney wrote to the District Attorney:
>> "In connection with the above captioned matter, I have been meeting with the defendant and his father for the past few months regarding a possible disposition of this case without the necessity of requiring the children to testify before the Grand Jury....
>>
>> "In light of these undertakings, I would request, therefore, on behalf of the defendant who joins in this request, that we schedule a dispositional hearing date on or before September 15, 2000, and the defendant does hereby waive any speedy trial or other rights that he may have by your concurring with this request."

---

[12] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000).

[13] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Between July and November, Daley and Aney spoke frequently and, eventually, the District Attorney reduced the offer by eight years.

Defendant Waldron, nevertheless, sought and paid for the legal advice of another inmate, and on November 30, 2000, filed a pro se speedy trial motion and discharged Aney. In his pro se motion, he contended that he had been in custody 317 days without the commencement of a trial, in violation of CPL 30.30(1)(a).FN1  Defendant was indicted on December 14, 2000 and arraigned on December 20, 2000, at which time the prosecutor announced his readiness for trial. The Herkimer County Court conducted a hearing on February 28, 2001 pursuant to the pro se CPL 30.30 motion. At the hearing, defendant contradicted Aney's claims that he knew of the intentional delay strategy. The court denied defendant's speedy trial motion.

> FN1. CPL 30.30(1)(a) states:
> 1. Except as otherwise provided in subdivision three, a motion made pursuant to paragraph (e) of subdivision one of section 170.30 or paragraph (g) of subdivision one of section 210.20 must be granted where the people are not ready for trial within:
> (a) six months of the commencement of a criminal action wherein a defendant is accused of one or more offenses, at least one of which is a felony.[14]

Waldron argues that waiver of the speedy trial statute cannot be accomplished unilaterally by defense counsel without the defendant's consent and approval, it must be made knowingly and voluntarily by the defendant. The New York Court of Appeals, construing N.Y. Penal Law § 30.30, rejected Waldron's argument, holding that where Waldon's "counsel explicitly waived speedy trial rights in order to complete ongoing plea negotiations, such time is excludable."[15]

Before this Court, Waldron contends:

> [T]he dissenting (Justices Green, J.P. and Justice Hayes, J.) at the Appellate Division correctly determined the issue of denial of speedy trial rights; namely, that the People did not establish that defendant's counsel effectively waived defendant's speedy trial rights nor that defense counsel, nor defendant consented to any delay or waived defendant's speedy trial rights; and that the

---

[14] *Waldron*, 847 N.E.2d at 368.

[15] *Id.* at 369.

> People did not meet their burden to establish a record demonstrating the basis for any claim of excludible (*sic*) time[.][16]

To the extent that Waldon raises an issue of the proper interpretation and application of State law, in this case, N.Y. Penal Law § 30.30, it is beyond the purview of this Court in a federal habeas proceeding. It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[17] A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[18] This principle applied to federal habeas review of state convictions long before the passage of AEDPA.[19] A federal court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state supreme court's interpretation of the law.[20] The New York Court of Appeals, the state's highest court, having spoken directly on the subject in this case, binds this Court.

---

[16] Docket No. 1, p. 8.

[17] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Federal courts must accept that state courts correctly applied state laws. *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

[18] *Bradshaw v. Richey,* 546 U.S. 74, 76, (2005); *see also West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law. . . .").

[19] *See Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law").

[20] *See Bradshaw*, 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

Other than citing the Sixth Amendment speedy trial provision and arguing in broad terms that denial of his speedy trial rights under § 30.30 resulted in a denial of due process under the Constitution of the United States in his Traverse, Waldron presents no constitutional issue in his Petition. A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[21] Nor may a federal court issue a habeas writ based upon a perceived error of state law, unless the error is sufficiently egregious to amount to a denial of due process under the Fourteenth Amendment.[22]

Even if Waldron properly presented a federal constitutional issue in his Petition before this Court, he would not prevail. Addressing the constitutional issue, the Court of Appeals held:

> Finally, we hold there was no constitutional violation of defendant's right to a speedy trial. In *People v. Taranovich,* 37 N.Y.2d 442, 373 N.Y.S.2d 79, 335 N.E.2d 303 [1975], this Court stated the following factors should be examined when a defendant claims there has been a denial of his right to a speedy trial: (1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay.
> Under the first factor, the extent or duration of the delay, we have a delay of almost a year. Although "the greater the delay the more probable it is that the accused will be harmed" (*id.* at 445, 373 N.Y.S.2d 79, 335 N.E.2d 303), here it appears the delay helped defendant. Analysis of the second factor, the reason for the delay, shows defendant and his former lawyer were primarily responsible and also falls in the People's favor. The third factor, the nature of the underlying charge, also falls in the People's favor as the grand jury ultimately indicted defendant on seven felony counts involving the sexual abuse of minors. This matter required delicate handling by the District Attorney, who sought to minimize further harm to the victims by making them testify.
> The fourth factor, whether or not there has been an extended period of pretrial incarceration, falls in the defendant's favor, although we note that he chose to extend this pretrial incarceration by agreeing to a waiver. Analysis of the fifth

---

[21] *See Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

[22] *See Pulley v. Harris*, 465 U.S. 37, 41 (1984).

factor, whether or not there is any indication that the defense has been impaired by reason of the delay, again shows that defendant was not impaired because he received a better offer from the prosecutor as a result of waiting. Balancing these factors, we hold that defendant was not deprived of his constitutional right to a speedy trial.[23]

The seminal Sixth Amendment speedy trial case is *Barker v. Wingo*,[24] which is "clearly established law" under AEDPA. As the Supreme Court recently noted in applying *Barker*:

> The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." The speedy-trial right is "amorphous," "slippery," and "necessarily relative." *Barker,* 407 U.S., at 522, 92 S.Ct. 2182 (quoting *Beavers v. Haubert,* 198 U.S. 77, 87, 25 S.Ct. 573, 49 L.Ed. 950 (1905)). It is "consistent with delays and depend[ent] upon circumstances." 407 U.S., at 522, 92 S.Ct. 2182 (internal quotation marks omitted). In *Barker,* the Court refused to "quantif[y]" the right "into a specified number of days or months" or to hinge the right on a defendant's explicit request for a speedy trial. *Id.,* at 522-525, 92 S.Ct. 2182. Rejecting such "inflexible approaches," *Barker* established a "balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Id.,* at 529, 530, 92 S.Ct. 2182. "[S]ome of the factors" that courts should weigh include "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Ibid.*[25]

This Court cannot say that the decision of the New York Court of Appeals was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[26] Nor can this Court find that the state court unreasonably applied the correct legal principle within the scope of *Andrade*-

---

[23] *Waldron*, 847 N.E.2d 370-71.

[24] 407 U.S. 514 (1972).

[25] *Vermont v. Brillon*, 555 U.S. ___, 129 S. Ct. 1283, 1290 (2009).

[26] 28 U.S.C. § 2254(d).

*Williams-Landrigan*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.

V.  CONCLUSION AND ORDER

Waldron is not entitled to relief on the ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[27]  To the extent the issues raised in the Petition were addressed by the New York Court of Appeals, no reasonable jurist could find that the decision was "objectively unreasonable."  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); Second Circuit R. 22.

The Clerk of the Court is to enter final judgment accordingly.

Dated: February 11, 2010.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

---

[27] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).